**GENERAL MOTORS CORPORATION,**
Plaintiff-Appellant,

v.

**DADE BONDED WAREHOUSE, INC.,**
et al., Defendants-Appellees.

No. 74–3647.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1975.

Rehearing Denied Feb. 13, 1975.

William G. Earle, Miami, Fla., for plaintiff-appellant.

Dan G. Wheeler, Jr., Miami, Fla., for Blanche R. Bergin.

Hugh L. Wood, Miami, Fla., for defendants-appellees.

Gladson & Knecht, Coral Gables, Fla., for Moore Pipe & Sprinkler Co.

Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge:

This diversity appeal presents the single question whether the district court correctly entered judgment notwithstanding the verdict in favor of Defendant-Appellee Dade Bonded Warehouse, Inc. In an earlier opinion, reported at 498 F.2d 327, we dismissed for lack of jurisdiction since Plaintiff-Appellant General Motors had failed to obtain the express findings and certification required by F.R.Civ.P. 54(b) in order to appeal a judgment which failed to dispose of all claims by all parties. In that opinion we invited the district court to enter a new interlocutory judgment conforming with Rule 54(b), whereupon we would consider the appeal on the record, briefs, and oral argument already submitted. The record now contains the proper certificate; hence we proceed to the merits of the cause.

Dade Bonded Warehouse, Inc. ("Bonded") was organized sometime prior to 1951 as a closely-held enterprise of the Bergin family partnership, headed by Cecil Bergin. In 1954 it constructed, or together with the partnership authorized the construction of, certain warehouse facilities. In 1964 Bonded caused these facilities to be enlarged by additional construction, which resulted in some alteration of the drainage from the original roof. On May 19, 1968 there was a four-and-one-half inch rain. The roof of the original building collapsed, trig-

gering the riser to the sprinkler system, thus effecting substantial water damage to the warehouse and its contents.

General Motors Corporation, through a subsidiary, had stored electrical appliances with Bonded. GM sued Bonded for its losses and joined Blanche Bergin, as personal representative of Cecil Bergin's estate, as an additional defendant. Bonded cross-claimed against Bergin. In a trial concerned solely with the issue of liability, the jury returned the following general verdict:

> We, the Jury, find for the Plaintiff, GENERAL MOTORS CORPORATION and against the Defendant, DADE BONDED WAREHOUSE INC. and against the Defendant, DADE BONDED WAREHOUSE INC. on its Cross Claim.

Thus, while the jury found for GM in the main suit against Bonded and against Bonded in the latter's third-party action, its verdict failed to decide the dispute between GM and Bergin. In an order entered subsequent to our earlier opinion, the district court announced its intention to reset GM versus Bergin for a new trial. That controversy, of course, is not before us, and nothing we say herein should be construed as intimating any view concerning it.[1]

Rather, the issue which we now face arose by virtue of the district court's post-verdict rulings. In a situation such as this—involving a bifurcated trial—the jury might ordinarily have been permitted to proceed to the second stage: the determination of damages. Before this could happen, however, the district court set aside the jury's verdict and granted Bonded a judgment n. o. v. We believe that this action was erroneous, that the judgment *sub judice* is due to be reversed, and that the jury's verdict must be given effect.

On December 20, 1965 Dade Bonded and Frigidaire Sales Corporation entered into a contract by which the form-

er was to furnish warehouse space for the electrical appliances of the latter. This contract contained the following provisio:

> "First Party agrees to compensate the Second Party for damages sustained by any of its merchandise while in the possession of First Party, unless such damage or injury results from causes other than negligence of First Party or any of its employees or workmen."

The complaint was grounded on negligence, in addition to bailment and warehouseman's liability.[2]

Our review of the case shows it to have fallen clearly within the prescriptions of Boeing Company v. Shipman, 5th Cir., 1969, 411 F.2d 365 (en banc):

> "On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substan-

---

1. We do, however, note our belief that the district court's contemplated action effectively moots GM's request for a new trial against Bergin.

2. We do not find it necessary to reach or decide the two latter contentions.

tial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."

In granting the judgment notwithstanding the verdict, the trial court stated:

"The collapse of the roof was totally unexpected and unforeseeable; it had been inspected on numerous occasions without revealing any defect, and had withstood torrential rains and hurricanes for 15 years prior to its collapse. Plaintiff failed to prove any duty breached by Dade Bonded. The evidence at trial was totally unsufficient to support the jury's verdict."

We note, however, evidence to the contrary, credited by the verdict, such as:

(1) The annex of 1964 was so constructed as to cause undue strain on the roof of the 1954 original building;

(2) The construction of the original and the annex was done with "day labor" and without the assistance of either an architect or a design engineer;

(3) The chief Dade County engineer testified that even if the roof had been filled to capacity with rain, it could not have overloaded a correctly constructed roof. He was of the opinion that there were seven possible structural failures which could have caused the collapse.

(4) A professional engineer who had evaluated the building on behalf of Dade Bonded testified that the roof could barely support its own weight; it collapsed because it was so constructed that the water could not properly drain off; certain beams were without adequate lateral support; and the higher annex blocked the flow of water off one side of the original structure, as indicated in sub-paragraph 1, *supra*.

The evaluation of this evidence, along with that offered in defense, together with the reasonable inferences to be drawn therefrom, about which reasonable men could certainly differ, was for the jury, and the jury acted on it. Its verdict should not have been set aside.

With directions to reinstate the verdict, and for further proceedings consistent herewith,

Reversed and remanded.

Each party shall be taxed with its own costs.